■ MODERN TELECOMMUNICATIONS, INC., Respondent-Appellant, v WILLIAM A. DALESSANDRO, Appellant-Respondent, and MODERN TALKING PICTURE SERVICE, INC., et al., Respondents. ROBERT C. WEISGERBER et al., Counterclaim Defendants-Respondents-Appellants.—Order of the Supreme Court, New York County (Peter Tom, J.), entered May 20, 1992, which, *inter alia,* granted the motion of the defendant Dalessandro for renewal and reargument of the motion by plaintiff and additional defendants on the counterclaim (Weisgerber and Mancino) for injunctive relief and adhered to the prior order of the same court and Justice entered on April 21, 1992, unanimously modified, on the law and the facts, to the extent of enjoining all sides from taking any action to manage plaintiff Modern Telecommunications, Inc. (MTI) pending the outcome of this litigation, directing the appointment of a receiver, remanding the matter for the appointment of a receiver and otherwise affirmed, without costs. Appeal from order of the same court, entered April 21, 1992, is dismissed as subsumed under the May 20, 1992 order, without costs.

The issue here is whether the plaintiff Modern Telecommunications, Inc. and the additional defendants on the counterclaim, Robert C. Weisgerber and Philip J. Mancino, are entitled to a preliminary injunction against defendant William Dalessandro in what is essentially a fight between two factions to control a corporation.

MTI is a Delaware corporation with its principal place of business in New York City. It is in the business of providing technical support for cable broadcasters, satellite broadcasters and others in the telecommunications industry. MTI was established in 1977 by additional defendants on the counterclaim, Weisgerber and Mancino, and defendant Dalessandro (known as the Three Principals) and by defendant Modern

Talking Picture Service, Inc. (MTPS), a wholly owned subsidiary of defendant KDI Corporation (KDI). One thousand shares were issued with MTPS owning 490 shares (49%), Weisgerber 183.6, Mancino 168.3 and Dalessandro 158.1.

A Shareholders' Agreement, dated July 26, 1977, was entered into by all four shareholders. Paragraph 8 of that agreement provided that MTI would be managed by a board of six directors, three being chosen by MTPS and three being chosen by the Three Principals. Four persons were necessary to constitute a quorum and a majority of those present was necessary to a decision unless otherwise required by law or agreement.

Paragraph 9 of said agreement provided, *inter alia*, that Weisgerber would be President, Mancino Vice President and Dalessandro Vice President and Treasurer.

Relevant to the issues presented here was Paragraph 7 of the Shareholders' Agreement which provided as follows:

"Voting of Shares. MTPS and the Three Principals shall not vote their shares in any manner that is contrary to this Agreement and the exhibits thereto or any other agreement between MTPS and the Three Principals." The agreement further provided that at any meeting of shareholders, 66% of the outstanding shares represented in person or by proxy were necessary to constitute a quorum.

Pursuant to Paragraph 15 of the Shareholders' Agreement, the Three Principals could offer to sell their shares to each other. If the offer was not accepted within ninety days, the Three Principals could offer to sell their shares to MTI. If the offer was not accepted within ninety days, the Three Principals could offer their shares to MTPS. Specifically, Paragraph 15 stated the following:

"15. SALE OF SHARES. The shares of the new corporation owned by the Three Principals may not be sold except in case of death or permanent disability while there remains outstanding indebtedness to Manufacturers Hanover Trust Company as set forth in 'Exhibit B' and to MTPS as set forth in 'Exhibit A' without the written consent of MTPS. Upon discharge of all the indebtedness to Manufacturers Hanover Trust Company ('Exhibit B') and MTPS ('Exhibit A') or in case of death or permanent disability of any of the Three Principals or if MTPS consents in writing as set forth above, the shares of the new corpora-

tion owned by any of the Three Principals shall be sold as follows:

"a) The Three Principals may offer in writing to sell to each other. The other Principals shall have ninety (90) days after receipt of the written notice to accept the offer. If the offer is not accepted within this period, then,

"b) The Three Principals may offer in writing to sell to the new corporation. The corporation shall have ninety (90) days after receipt of the written notice to accept the offer. If the offer is not accepted within this period, then,

"c) The Three Principals may offer in writing to sell to MTPS.

"The sale price of the shares of the new corporation under 15.b) and 15.c) above shall be the net tangible book value at the time of the offer to sell. The sale price of the shares of the new corporation under 15.a) above shall be as mutually agreed upon by the Three Principals.

"The shares of the new corporation owned by MTPS may not be sold unless the shares to be sold have first been offered to the other shareholders in writing and such other shareholders have refused to accept the offer. The other shareholders shall have ninety (90) days after receipt of the written notice to accept the offer. The sale price of the shares of the new corporation to the other shareholders shall be the net tangible book value at the time of the offer to sell."

By an agreement dated December 27, 1982, MTPS, MTI and the Three Principals agreed to amend the Shareholders' Agreement and the By-Laws in several respects. Among these were the following: 1. A quorum would consist of a majority of the outstanding capital stock for stockholders meetings and a majority of the directors for directors' meetings. 2. Except as otherwise provided, acts of the shareholders would be decided by majority vote of those attending a duly convened meeting of shareholders and by three of those directors attending a duly convened meeting of directors. 3. A portion of Paragraph 6 of the 1977 Shareholders' Agreement requiring 66% of the outstanding shares for a quorum and all of Paragraphs 8 (Management of the Corporation) and 9 (Officers) were deleted. 4. Except as specifically amended, the 1977 agreement continued in full force and effect.

The events leading to the present lawsuit apparently began in September of 1991. At that time Weisgerber and Mancino, purportedly acting on behalf of plaintiff MTI, began negotiations with defendant KDI for purchase of the 49% share of

MTI held by MTPS. The deal was to have been completed in January 1992. Apparently, MTI would purchase and retire the shares held by MTPS, leaving Weisgerber, Mancino and Dalessandro with 36%, 33% and 31% of the shares, respectively. In addition, following MTI's purchase of the shares held by MTPS, there would be significant financing and refinancing by MTI.

By letter dated January 30, 1992, to Weisgerber and Mancino, an attorney for Dalessandro objected to the MTI purchase of MTI shares as "unlawful, improper and *ultra vires.*" The letter stated that the purchase of the shares had not been discussed with or approved by MTI's Board of Directors. The letter demanded that any offer to KDI to purchase the MTI shares without Board approval be withdrawn.

By letter dated January 31, 1992, Weisgerber, purportedly acting as President and Chief Executive Officer of MTI, terminated Dalessandro as Vice President and an employee of MTI "because of your failure to perform your assigned duties in a satisfactory fashion over an extended period of time and because of numerous actions you have taken in recent months which are detrimental to the Company's interests."

By a complaint dated January 31, 1992, MTI sued Dalessandro, MTPS and KDI for breach of fiduciary duty and for interference with prospective contractual relations. Defendant Dalessandro answered and, in addition, alleged that the additional defendants on the counterclaim, Weisgerber and Mancino, had themselves breached their fiduciary duty to MTI.

By letter dated February 3, 1992, from Dalessandro's attorney Alan Lebensfeld to Roger Byer of KDI, defendant Dalessandro offered to purchase all MTI stock held by MTPS. By letter dated February 10, 1992, from Arthur Kramer, MTI's counsel, to Kevan Langner of KDI, MTI offered to purchase the MTI stock held by MTPS.

Following commencement of this action defendant Dalessandro sought an injunction vacating and setting aside his termination and restoring him to his position. By decision and order dated February 26, 1992, the Supreme Court denied the motion. Subsequently, defendant Dalessandro appealed to this court. By an order dated March 3, 1992, this court granted a preliminary appellate injunction enjoining the actions by MTI unless plaintiff MTI "convenes a meeting of the board of directors within ten days after service of a copy of this order".

Pursuant to this court's order, a meeting of the MTI Board of Directors was held on March 13, 1992. The Three Principals

attended, as did two representatives designated by KDI. At the meeting Weisgerber and Mancino voted against the reinstatement of Dalessandro while Dalessandro and the two KDI representatives voted for it.

On March 14, 1992, Dalessandro purportedly purchased the MTI shares from MTPS for $1.25 million. On the same date the two KDI directors resigned. In addition, Dalessandro executed a Consent of Stockholders of MTI in Lieu of Annual Meeting in which Weisgerber and Mancino were removed as directors and terminated as officers of MTI.

By a special Board meeting held on March 29, 1992, Weisgerber and Mancino refused to recognize the actions taken by Dalessandro, elected new Board members to replace the two KDI members and denied reinstatement to Dalessandro.

By an order to show cause dated March 16, 1992, plaintiff MTI and additional defendants on the counterclaim, Weisgerber and Mancino, sought a preliminary injunction against defendant Dalessandro, *inter alia,* directing him to stay away from MTI's offices and to refrain from interfering with MTI's business, declaring that Dalessandro held in trust the shares of MTI purportedly purchased from MTPS and declaring null and void the purported election of MTI directors by Dalessandro.

In its decision on the motion for a preliminary injunction, decided on April 16, 1992, the Supreme Court found that the 1977 agreement was a shareholders' agreement still in effect and not a voting agreement which had expired by operation of law. It also declared null and void the purported election of MTI directors by Dalessandro. In granting a preliminary injunction, the motion court determined that the movants had shown a likelihood of success on the merits, irreparable injury if relief was not granted, and a balancing of equities in their favor. The court did not determine the issue of the validity of Dalessandro's purchase of the MTI stock. Since this action had begun prior to the purported purchase by Dalessandro of stock held by MTPS, the court granted leave to plaintiff to serve an amended complaint.

By order entered May 20, 1992, the Supreme Court, *inter alia,* granted reargument of the motion for a preliminary injunction and adhered to its prior decision.

On this appeal, defendant Dalessandro seeks reversal of the order granting a preliminary injunction and an order granting summary judgment to him holding the 1977 Shareholders' Agreement null and void.

Defendant's arguments may be summarized as follows. The 1977 Shareholders' Agreement is a voting agreement which expires by operation of law after ten years unless timely extended (Del Code Annot, tit 8, § 218 [c]). Even if the Shareholders' Agreement had not expired by operation of law, the Agreement was not intended to apply to a situation where defendant validly purchased MTI shares owned by MTPS. The motion court's grant of summary judgment to plaintiff and the additional defendants on the counterclaim was improper for a number of reasons, including the fact that said parties have unclean hands and delayed in seeking relief. Defendant did not usurp a corporate opportunity in purchasing shares of MTI belonging to MTPS.

The plaintiff and the additional defendants on the counterclaim counter with the following arguments. The 1977 Shareholders' Agreement and the 1982 amendment are still in effect. Even if they are not in effect, the defendant's actions were not consistent with MTI's By-Laws. The preliminary injunction was warranted by the showing made to the motion court.

The motion court determined that the 1977 Shareholders' Agreement was not a voting trust and that Delaware Code Annotated, title 8, § 218 (c) did not apply. That section provides that a voting agreement can be effective for no more than ten years but that the agreement can be extended for up to ten additional years at any time within two years of its expiration.

Section 218 (c) reads as follows: "An agreement between 2 or more stockholders, if in writing and signed by the parties thereto, may provide that in exercising any voting rights, the shares held by them shall be voted as provided by the agreement, or as the parties may agree, or as determined in accordance with a procedure agreed upon by them. No such agreement shall be effective for a term of more than 10 years, but, at any time within 2 years prior to the time of the expiration of such agreement, the parties may extend its duration for as many additional periods, each not to exceed 10 years, as they may desire."

We do not now determine whether the 1977 Shareholders' Agreement remains in effect. Such a review must await a fuller development of the record including the parties' intent at the time of the 1982 amendment. In addition, we find that a number of other issues cannot now be determined on the record before us. These issues include whether any party

breached a fiduciary duty to MTI and whether defendant Dalessandro usurped a corporate opportunity by his purported purchase of MTI shares from MTPS. Because these issues are not readily resolved on this record and because the record demonstrates that the actions of the various antagonists threaten the wellbeing and continued viability of MTI, we deem it appropriate that a receiver be appointed to manage the corporation pending the outcome of this litigation *(see, Ault v Soutter,* 167 AD2d 38 [1991]; *Glassner v Kaufman,* 19 AD2d 885 [1963]; *Matter of North European Oil Corp.,* 36 Del Ch 290, 129 A2d 259, 261 [1957]; *Salnita Corp. v Walter Holding Corp.,* 19 Del Ch 426, 168 A 74, 75 [1933]). We remand accordingly. Concur—Milonas, J. P., Wallach, Kupferman and Smith, JJ.